**William NEACE, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPT. OF LABOR and Benefits Review Board, Respondents.**

No. 86–3756.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 17, 1987.

Decided Jan. 30, 1989.

Nancy M. Collins (argued), Hollon, Hollon, & Hollon, Hazard, Ky., for petitioner.

J. Michael O'Neill, Donald S. Shire, Associate Sol., U.S. Dept. of Labor, Roscoe C. Bryant, III (argued), Washington, D.C., for respondents.

Before JONES, WELLFORD and BOGGS, Circuit Judges.

WELLFORD, Circuit Judge.

Petitioner, William Neace ("Neace") appeals the decision by the Benefits Review Board ("BRB") affirming the denial by the Administrative Law Judge ("ALJ") of his claim for black lung disability benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq., ("the Act"). While we affirm with respect to the denial of benefits under Part C of the Act, we remand for further consideration of Neace's claim filed under Part B of the Act.

Neace was employed in an underground coal mine as a driller and hand loader for seventeen years between 1944 and 1964. He filed an application for black lung benefits with the Social Security Administration ("SSA") in October of 1970 under Part B of the Act, which was denied. Thereafter, in July, 1975, Neace filed a second application with the Department of Labor ("DOL") under Part C of the Act, which also was denied administratively on July 30, 1980.

At Neace's request, a formal hearing was held in Hazard, Kentucky on April 7, 1983, before the ALJ. Neace testified that he had an eighth grade education. At the time of the hearing, he was fifty-five years old. He described difficulty walking, particularly while ascending an incline, shortness of breath, a problematic cough with smothering chest pains when breathing heavily, and difficulty sleeping due to his cough. Neace explained that he had been forced at times to leave his coal mining employment because of his respiratory problems until he ultimately left coal mining completely in 1964. He has no other significant employment history.

The pertinent medical evidence consists of the results of five ventilatory function studies, two blood gas studies, chest x-rays, and five physicians' opinions. Giving the plaintiff the benefit of some doubt, the ALJ found from the x-ray evidence that Neace had established the existence of pneumoconiosis (black lung disease), and the Director does not challenge this finding. The ALJ concluded that Neace therefore was entitled to the interim presumption of total disability due to pneumoconiosis arising out of his seventeen years of coal mining employment pursuant to 20 C.F.R. § 727.203(a).[1] Four of the five ventilatory function studies failed to establish total disability due to chronic respiratory or pulmonary disease pursuant to 20 C.F.R.

---

1. 20 C.F.R. § 727.203(a) provides, in part:

§ 727.203 Interim presumption

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumonconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title);

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in § 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified....

....

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;

(5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.

§ 727.203(a)(2). The remaining ventilatory function study, which met the criteria of 20 C.F.R. § 727.203(a)(2), was discredited by the ALJ because Neace's cooperation was noted as only fair. Both of the blood gas studies also failed to establish total disability due to pulmonary or respiratory disease.

Dr. Ballard D. Wright examined Neace in March of 1973, taking a chest x-ray and conducting pulmonary function studies, a physical examination, and blood gas studies. Dr. Wright interpreted Neace's chest x-ray as consistent with pneumoconiosis. He diagnosed mild obstructive pulmonary disease but found no evidence of restrictive disease. Dr. Wright, however, made no assessment of Neace's ability to perform his usual or comparable gainful employment. Dr. H. David Kerr, a consultant in pulmonary disease with the Bureau of Disability Insurance, reviewed Dr. Wright's clinical results and findings at the request of the Social Security Administration. He concluded that "[t]he medical evidence does not reveal evidence of a significant impairment of pulmonary function. Ventilatory capacity and gas exchange are normal." Dr. Kerr also concluded that Neace had "demonstrated the aerobic capacity for medium work activity."

Dr. W.F. Clarke examined Neace in January of 1974, and conducted an electrocardiagram, a pulmonary function study, and took a chest x-ray. The pulmonary function study conducted by Dr. Clarke resulted in values sufficient to establish the presence of chronic respiratory or pulmonary disease, but it was noted that Neace failed to exert maximum effort on this occasion. Dr. Clarke diagnosed pneumoconiosis based upon the chest x-ray and opined that Neace was "permanently and totally disabled for all work in a dusty environment and for all manual labor." Dr. Paul Odum also examined Neace during January of 1974. He performed a physical examination, chest x-ray, and pulmonary function studies. Dr. Odum found the chest x-ray consistent with pneumoconiosis, but he concluded that Neace had only moderate pulmonary impairment. It was Dr. Odum's opinion that Neace was "[t]otally and permanently disabled for coal mining and work in a dusty environment."

In September of 1975, Neace was examined by Dr. Cordell Williams, who performed a physical examination, took a chest x-ray, and conducted pulmonary function studies. He diagnosed Neace's condition as "[p]sychoneurosis with conversion and anxiety symptoms" and found "no evidence of any significant pulmonary disease, occupational or otherwise." He found no evidence to support a diagnosis of organic heart disease.

■ Based on the foregoing medical evidence, the ALJ found that the Director had rebutted Neace's presumed entitlement to benefits under 20 C.F.R. § 727.203(b)(2),[2] and therefore also had failed to establish entitlement to benefits under 20 C.F.R. Part 410, Subpart D. The ALJ considered the opinions of Drs. Wright, Kerr, Odum and Williams and concluded that Dr. Williams' most recent assessment was entitled to the greatest weight and was supported by the opinion of Dr. Kerr. He noted that Dr. Williams' finding of no evidence of pulmonary disease was also buttressed by the objective evidence of record, including the ventilatory function and blood gas studies. The ALJ discounted Dr. Wright's determination of mild obstructive disease because Dr. Wright did not address specifically the issue of whether Neace was capable of his usual coal mine work, choosing instead to credit Dr. Kerr's opinion that there was no evidence of significant impairment. The ALJ did not specifically address Dr. Clarke's opinion, except that he discounted the ventilatory function study because of Neace's lack of cooperation.

---

2. 20 C.F.R. § 727.203 provides, in relevant part:
   (b) **Rebuttal of interim presumption.** In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

   (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title);
   . . .

In concluding that the Director had rebutted a presumption of entitlement to benefits, the ALJ found only that Neace did not suffer from a totally disabling *respiratory* disease, and made no explicit finding that Neace was able to do his usual coal mine work or comparable and gainful work.

The ALJ's findings may not be set aside if they are based upon substantial evidence viewing the record as a whole, even if this court would have taken a different view of the evidence were it the trier of fact. *Moore v. Califano*, 633 F.2d 727 (6th Cir. 1980). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 730 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The factfinder is required to "examine the validity of the reasoning of a medical opinion in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based. Of course, the factfinder should also consider any contrary test results or diagnosis in reaching a decision as to whether a statutory presumption applies and ultimately whether the claimant is totally disabled." *Director, Office of Workers' Compensation Programs v. Rowe*, 710 F.2d 251, 255 (6th Cir.1983) (footnote omitted).

█ Neace contends that the ALJ's reliance on the opinions and reports of Drs. Williams and Kerr is misplaced, and that the conclusion of Dr. Williams that he found no evidence of significant pulmonary disease is too equivocal to support a finding of rebuttal of the interim presumption.[3] We find no error in the ALJ's reliance on Dr. Williams' conclusions which were based upon a medical and work history, physical examination, a chest x-ray, and ventilatory function studies.

█ Neace also challenges reliance upon Dr. Kerr's report since he did not personally examine Neace, and because he claims that his findings of aerobic capacity for only medium work were inconsistent with Dr. Williams' finding of no significant pulmonary disease. While Neace is correct that Dr. Kerr's report alone would not constitute substantial evidence, the ALJ in the present case relied on Dr. Kerr's report as supportive of that of Dr. Williams, the most recent examining physician. *Collins v. Secretary of Health and Human Services*, 734 F.2d 1177 (6th Cir.1984), relied upon by plaintiff, would not preclude appropriate weight being attributed to the opinion of a non-examining physician.

Neace contends that the opinions of Drs. Williams and Kerr do not constitute substantial evidence in the face of opposite opinions of Drs. Odum and Clarke. In the alternative, Neace seeks remand due to the ALJ's failure adequately to discuss and to consider the reports of Drs. Odum and Clarke, a failure he claims to constitute a violation of the ALJ's duty to consider all the evidence. *See Rowe*, 710 F.2d at 251. Contrary to Neace's assertions, however, the ALJ specifically considered Dr. Odum's opinion, although he did not detail his reasons for rejecting it. While the ALJ fails to set out his appraisal of Dr. Clarke's opinion, he does explain his discounting of the ventilatory function study performed by Dr. Clarke. He also noted that four other ventilatory studies were non-qualifying.

We believe it is evident, moreover, that the ALJ considered that the opinions of Drs. Odum and Clarke were not supported by the clear weight of the evidence. *See Rowe*, 710 F.2d at 255. The Secretary argues in addition that Dr. Clarke's opinion is flawed because it appears to be based only on a particular study rather than full clinical evidence addressing the basis of his opinion on impairment.[4] *See Prokes v.*

3. In addition, Neace contends that the report of Dr. Williams is not a reasoned medical opinion because of his failure to diagnose pneumoconiosis.

4. In the joint appendix, there appears with Dr. Clarke's opinion only the aforementioned ventilatory study. The Board's opinion refers to Dr. Clarke's diagnosis as based primarily on an x-ray finding that was "insufficient to establish the extent of any respiratory disability." The Board found it unnecessary to consider any claimed entitlement under 20 C.F.R. Part 410, Subpart D.

*Mathews,* 559 F.2d 1057 (6th Cir.1977). While both Dr. Odum and Dr. Clarke caution Neace against further dust exposure, their opinions do not, as such, constitute substantial evidence that Neace is necessarily totally disabled from his usual coal mine work. *See Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 487–88 (6th Cir.1985). It should be noted that Dr. Clarke also finds Neace to be disabled from "all manual labor."

■ To the extent that a medical opinion cautions a claimant against exposure to dust, but fails to find total impairment, that opinion is not required to be accepted as necessarily constituting a finding of total disability. In order to constitute substantial evidence of disability under the Act, the opinion must also diagnose total impairment, and be supported by the clinical evidence. The ALJ did not specifically explain his reasons for discounting the opinions of Drs. Odum and Clarke, but concluded that totality of the evidence did not indicate a total disability. Their finding of Neace's inability to work in a dusty environment or to do manual labor was in conflict with other medical opinions, which were supported by clinical evidence. The ALJ carefully weighed all of the pertinent medical evidence and had a rational and substantial basis for his determination that the interim presumption was rebutted under 20 C.F.R. § 727.203(b)(2).

■ As an additional basis for remand, Neace asserts that the ALJ failed to consider his age, education, and work experience. Neace's claims that vocational factors, in addition to his own testimony, should have been considered in the ALJ's determination under Part C of the Act is without merit. Vocational evidence need not be considered when determining, pursuant to 20 C.F.R. § 727.203(b)(2), whether an employer has rebutted the interim presumption by proving through medical evidence that the

claimant's pneumoconiosis "is not disabling." *Ramey,* 755 F.2d at 488. *Ramey* also stands for the proposition that § 727.203(b)(2) rebuttal is primarily a medical determination, not a vocational determination. *Id.* at 489.[5]

*York v. Benefits Review Board,* 819 F.2d 134 (6th Cir.1987), requires the ALJ to consider all relevant *medical* evidence in determining whether the claimant is totally disabled by a respiratory ailment in combination with other "physical impairments." In the present case, there was no substantial medical evidence of any other type of impairment other than a potential respiratory impairment. Consideration of vocational evidence and claimant-described symptoms of the alleged respiratory impairment is not mandated by *York,* which indicates that the analysis of the Secretary in the instant case was not in error. *York* establishes that "[u]nder (b)(2) the director must prove that 'in light of all relevant evidence ... the individual is able to do his usual coal mine work or comparable and gainful work.'" 819 F.2d at 137.[6]

We have discussed the relevant considerations in a case of this kind involving the employer's (b)(2) rebuttal requirements where the claimant has established entitlement to a 20 C.F.R. § 727.203(a) presumption of total disability and there is conflicting medical testimony concerning the extent of disability. *Ramey* held that "the test of total disability is solely a medical test." 755 F.2d at 490. *York,* hereinbefore discussed, however, indicates that the director must carry the burden of persuasion that the claimant "is able to do his usual coal mine work or comparable work." 819 F.2d at 137. The problem in this case is whether the ALJ and/or the Board clearly made this particular determination. This is important because *Kolesar v. Youghiogheny & Ohio Coal Co.,* 760 F.2d 728 (6th Cir.1985), holds that when the issue is whether "a coal miner's pneumoconiosis

5. The United States Supreme Court recently reaffirmed the distinction between rebuttal evidence allowable in Part B and Part C cases. *See Pittston Coal Group v. McLaughlin,* —— U.S. ——, ——, 109 S.Ct. 414, 417, 102 L.Ed.2d 408 (1988).

6. *York* indicated that in a case involving conflicting medical opinions about extent of disability, the opinions of two doctors, versus contrary opinions of others, constituted "substantial evidence that York [was] not totally disabled by a respiratory impairment." 819 F.2d at 137.

prevents him from doing *comparable, gainful* work," then additional vocational factors may apply because of the incorporation by reference into § 727.203(b)(2) of 20 C.F.R. § 410.412(a)(1). 760 F.2d at 730 (emphasis added). Dr. Williams' opinion clearly supports either conclusion. Dr. Wright's earlier opinion does not address Neace's ability to do usual coal mine or comparable work. Dr. Kerr's reference to "aerobic capacity for medium work activity" makes it unclear about what Dr. Kerr means concerning Neace's lack of "significant" pulmonary impairment. As stated, Drs. Odum and Clarke have contrary diagnoses. Neace maintains that Dr. Clarke's opinion "was based upon chest x-ray, EKG and pulmonary function studies," (appellant's brief at 13) but this is not clear in the joint appendix. In any event, the Board, in affirming the ALJ's decision, considered and rejected Dr. Clarke's diagnosis and opinion. Given the absence of any substantial medical evidence of any type of impairment other than a potential respiratory impairment, we find the ALJ's determination of no disabling respiratory impairment to be the equivalent of a finding that Neace could perform his usual coal mine work which does not require consideration of vocational factors. Accordingly, we are satisfied, although it is a close case on the facts, that the Secretary's analysis under 20 C.F.R. § 727.203(b)(2) is not erroneous.

■ We turn to a consideration of the question of need for a further analysis under 20 C.F.R. Part 410 of the Act. Neace also contends that 20 C.F.R. Part 410 requires consideration of his age, education, and work experience. The ALJ found as his ultimate conclusion that Neace "was not disabled as a result of pneumoconiosis" and also that he failed "to establish entitlement to benefits under Part 410 of the regulations." Neace filed his application for benefits originally in 1970 but all the evidence relates to later examinations. The interim presumption under 20 C.F.R. § 410.490(b) relates to claims for benefits filed prior to July 1, 1973. A presumption of disability, once established, may be rebutted if "[o]ther evidence ... establish[es] that the individual is able to do his usual coal mine work or comparable and gainful work...." 20 C.F.R. § 410.490(c)(2). *See also* 30 U.S.C. § 902(f)(2)(C). As in *Kyle v. Director*, 819 F.2d 139 (6th Cir.1987), we are disposed to remand this case for reconsideration as to whether Part 410 criteria are applicable and whether they are met in this case with respect to the rebuttal of the presumption of disability.

*Haywood v. Secretary of Health and Human Services*, 699 F.2d 277 (6th Cir. 1983), establishes that "[t]he relevant inquiry [under Part 410] for determining total disability is whether the claimant is vocationally disabled, not physically disabled.... The Secretary cannot rebut the presumption of total disability unless he demonstrates that the claimant is not vocationally disabled in the immediate area around his home." 699 F.2d at 285. We REMAND, then, for further consideration of Neace's claim for benefits under Part B of the Act, with consideration to be given to Neace's age, education and work experience or skills.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Because neither substantial evidence nor a proper administrative finding supports the conclusion that the Director has rebutted the disability presumption in this case, I respectfully dissent from the majority's decision.

The ALJ in this case found that while Neace proved his entitlement to the interim presumption under 20 C.F.R. § 727.203(b)(1), the Director successfully rebutted this presumption under subsection (b)(2). The latter provision states that the interim disability presumption is legally rebutted if the Director establishes that the claimant is "able to do his usual coal mine work or comparable and gainful work...." This court has held in *York v. Benefits Review Board*, 819 F.2d 134, 137–38 (6th Cir.1987), that rebuttal is not accomplished under subsection (b)(2) merely by showing that the claimant's respiratory impairment does not prevent him from performing his past coal mine work. Rather, the Director must *affirmatively prove* that the claimant

is fully capable of performing the physical and cognitive tasks involved in his past coal mine work or comparable and gainful work. *Id.* at 138–39 (Celebrezze, J., concurring).

The record in the instant case contains evidence that Neace suffered from respiratory *and* psychoneurotic impairments. However, contrary to the clear teaching of *York*, the Board relied solely upon Neace's respiratory impairment in holding that the Director had rebutted the (b)(1) presumption. The Board's error is magnified by Dr. Williams's report, which implies that *but for* the psychoneurotic problem, Neace could do his usual work. Appellee's Br. at 9; J.App. at 21. Given the record evidence of Neace's psychoneurosis, the Board's reliance on his respiratory impairment alone is clearly in error under subsection (b)(2) as interpreted in *York*.

Further compounding the Board's error is the ALJ's failure to make a finding that Neace actually could perform his past coal mine work. Although the majority concludes that "the ALJ's determination of no disabling respiratory impairment [is] the equivalent of a finding that Neace could perform his usual coal mine work," this conclusion is contrary to the opinions of all of the examining physicians. As noted earlier, Dr. Williams's report suggests that Neace cannot return to his past work or comparable work because of his psychoneurosis. Further, while Dr. Kerr's report indicates that Neace does not suffer from a disabling respiratory impairment, Dr. Kerr opines that Neace is capable of performing only medium work activity. J.App. at 43. Since Neace's past coal mine work involved constant heavy lifting and bending, Dr. Kerr's report suggests that Neace could not return to this or comparable work. Finally, Drs. Wright, Clarke and Odum indicated that Neace suffered from pneumoconiosis, and Drs. Clarke and Odum found that he was disabled from all work in a dusty environment due to this condition. Given that all of the physicians' reports indicate that Neace is not capable of doing his past coal mine work or comparable gainful work, substantial evidence does not support the Board's determination (assum-

ing that such a determination was made) that Neace is capable of returning to his past work or performing comparable work.

For the foregoing reasons, I respectfully dissent.